HEARD APRIL TERM, 1876.

## GUFFIN *vs.* INGRAM.

An action cannot be maintained by the successor in office of a Sheriff upon a bond
given by a defendant in execution to the Sheriff for the delivery to him or his
Deputy of property levied upon under the execution and left with the defendant
.therein.

A bond given by a defendant in execution to a Sheriff for property levied upon under
the execution is a mere personal obligation for the indemnity of the Sheriff and
not an official bond which passes to his successor in office.

BEFORE COOKE, J., AT ABBEVILLE, JANUARY TERM, 1876.

This was an action by L. P. Guffin, as Sheriff of Abbeville
County, against J. Boyd Ingram and Thomas Stuart.

The case was as follows:

In the year 1871, H. S. Cason.was Sheriff of Abbeville County,
and had in his office one or more executions against the property
of Nathan Ingram, which he had levied upon the property men-
tioned in the bond upon which this action was brought. The
property was left in the possession of the defendant in execution,
and, on November 5, 1871, Cason took from him and the defend-
ants above named, J. Boyd Ingram and Thomas Stuart, the bond,
of which the following is a copy:

STATE OF SOUTH CAROLINA, ⎫
    ABBEVILLE COUNTY. ⎬

Whereas H. S. Cason, Sheriff of Abbeville County, by virtue of
a legal process to me directed, requiring me to levy on all the
property of Nathan Ingram, both personal and real, found on his
premises or in his possession, have this day, in obedience to said
order, levied upon the following property, to wit:

N. Ingram's—1 mule, (black mare,) 125 bushels corn, about
1,500 pounds fodder, 1 wagon, 2 cows, 1 gun, 15 bushels wheat;
also property claimed by J. Boyd Ingram, on which a protest is
entered: 2 mules, 2 cows, 2 yearlings, about 2,500 pounds fodder,
200 bushels corn, 6 pork hogs, 4,000 pounds seed cotton; also upon
tract of land known as the Home tract; and, also, land (J. B. In-
gram claims) known as the Fuller tract.

And whereas we, the undersigned, Nathan Ingram, J. B. Ingram
and Thomas Stuart, do hereby acknowledge a levy upon the above
named personal property, as also upon the real estate, and bind

VOL VIII—17

ourselves to deliver the above property to said H. S. Cason, at Abbeville C. H., at any future time required by said H. S. Cason or his Deputy.

In witness whereof we bind ourselves in the sum of eight hundred and sixty-two dollars, ($862,) should we fail to comply with the above obligation, this fifth day of November, one thousand eight hundred and seventy-one.

|  |  |  |
|---|---|---|
| (Signed,) | N. INGRAM. | [L. s.] |
| (Signed,) | J. B. INGRAM. | [L. s.] |
| (Signed,) | THOS. STUART. | [L. s.] |

Witness:

ED. MOORE.

Nathan Ingram died intestate and insolvent, leaving sundry judgments against him unsatisfied. After his death, the two parcels of land were sold by the Sheriff as his property. They brought merely nominal prices.

The plaintiff in this action became the successor in office of H. S. Cason. The bond above recited was turned over to him, and on the 11th day of March, 1875, he commenced this action thereon,—having first given notice to each of the defendants that he demanded of him the delivery of the property or payment of the sum mentioned in the bond.

When the plaintiff rested, the defendant moved for a nonsuit on the grounds—

1. That the bond sued on was unauthorized by law.

2. That it was not assignable, and, as a fact, had not been assigned.

His Honor the presiding Judge granted the motion, and the plaintiff appealed.

*Perrin & Cothran,* for appellants, contended that the bond sued on was good and valid in law.—2 Bl. Com., 340; Bac. Abr., Conditions, K. B.

The bond was not assignable.—*Smith* vs. *Cooke & Norris,* 2 McM., 58.

The law requires the outgoing Sheriff to turn over to his successor "all original bonds officially taken by him, (Rev. Stat., § 16, Ch. 20,) and the bond sued on is included in those terms. The plaintiff could, if necessary, maintain the action as the trustee of an express trust.—Code, § 136.

*Thomson & Burt,* contra:

1. That the law makes no provision for a Sheriff's taking a bond like that on which suit has been brought; that it is altogether personal and unofficial, and is discountenanced, if not illegal—2 Bay, 67; 3 Hill, 170; 2 Speer, 19.

No provision for postponing the sale of property under an execution.—Rev. Stat., 165, § 42.

2. That the bond is not assignable; nor can it be enforced by this plaintiff, who has no interest in it; that the only parties who can sue on behalf of others are: 1. Executors and administrators; 2. Trustees of an express trust, with whom, or in whose name, a contract is made for the benefit of another.—Rev. Stat., p. 594, § 136; 3. Persons authorized by statute to sue—of whom a list is given in 1 Tillinghast·& Shearman, 459. The Sheriff is not of the number.—1 Waite's Pr., 102–104.

3. The Sheriff may, however, sue in some cases under the attachment law.—Rev. Stat., 624, 627.

4. The Code does not authorize the assignment of any right of action not assignable before.—1 Tillinghast & Shearman, 449; 1 Waite's Pr., 91, and cases cited.

. And it is a general rule, capable of practical application, that the party who will be directly benefitted by the successful prosecution of an action, and who will be entitled to receive the damages recovered, is the proper party to be made the plaintiff in the action.—1 Waite's Pr., 89; *Hastings* vs. *McKinley,* 1 E. D. Smith, 273.

5. The only bonds required to be transferred by the Sheriff to his successor are "original bonds officially taken by him."—Rev. Stat., 160, § 16.

July 26, 1876. The opinion of the Court was delivered by

MOSES, C. J. H. S. Cason, Sheriff of Abbeville County, by virtue of execution in his hands against one N. Ingram, levied on a mule, some corn, a wagon, a gun, two cows, some wheat, also the following property claimed by J. Boyd Ingram, "against which a protest was entered," viz.: two mules, two cows, two yearlings, fodder, corn, six pork hogs and some seed cotton, also a tract of land known as the Home tract, and land (the Fuller tract) claimed by said J. B. Ingram.

On the 5th November, 1871, N. Ingram, with J. B. Ingram and Thomas Stuart as his sureties, executed an instrument, under seal, reciting the statement above made, and, acknowledging a levy as well on the personal as real property, bound themselves to deliver the said property to said H. S. Cason, at Abbeville Court House, at any future time required by him or his Deputy; and also bound themselves in the sum of $862 should they "fail to comply with the above obligation."

N. Ingram soon after died intestate and insolvent, with sundry unsatisfied judgments against him. The land was sold and brought the nominal sum of five dollars. On February 5th, 1875, J. B. Ingram and Thomas Stuart were each served with a notice from L. P. Guffin, Sheriff of Abbeville County, referring to the execution of the said instrument to his predecessors in office, and demanding the protection and delivery of the said property, or the payment into his office of the sum stipulated in the said obligation. No delivery having been made, this action was brought against them on 11th March, 1875. After the plaintiff had closed his case a nonsuit was moved for and granted on the ground that there was no right of action in the plaintiff, who could not, therefore, maintain the suit. To set aside the nonsuit is the purpose of the motion now before us.

The bond may be admitted to be a good one at common law. It does not follow because it may not be authorized by any positive statute that it is not valid and of effect between the immediate parties and their representatives. Nor is it necessary to inquire whether the instrument in question was assignable, because it is not claimed to be held by any title derived through an assignment.

The bond itself has none of the characteristics of an official bond. It is not payable to Cason and his successors in office, and on its face is but a personal obligation to him.

It is contended, however, that, by the operation of certain statutes, bonds "officially taken" by a Sheriff are transmitted to his successor. This must be readily conceded, for such is the statutory provision. It nevertheless leaves the inquiry still open, whether this is a bond taken by a Sheriff in his official capacity, or whether it is anything but a mere personal contract, securing him against the loss or risk he incurs by leaving the property levied on in the possession of the defendant in execution. By the levy the title vested in the Sheriff. He might have permitted the chattels to have re-

mained in the hands of the defendant without any security for its delivery. The bond was but the means of insuring himself against any loss which might ensue from the wrongful conversion of the property by those in whose hands he had left it.

By the 16th Section of Chapter XX of General Statutes, p. 160, following the Act of 1839, (11 Stat. at Large, 27,) it is made "the duty of every Sheriff to turn over to his successor all the furniture appertaining to his office, the original writ book and sale book, and also the original execution book, or a correct certified copy thereof, and also all original bonds officially taken by him, all mesne process not served, and all final processes partially or wholly executed;" and by the 55th Section of the same Chapter, (General Statutes, 168,) he is required "to turn over to his successor all money remaining in his hands as Sheriff within one month from the time his successor shall have entered on the duties of his office, and in the same manner as he is required to turn over to his successor the furniture, books, bonds, processes and other papers." When this provision, which was but the re-enactment of the first Section of the Act of 1839, (12 Stat., 788,) was adopted, no transfer of any papers to the succeeding Sheriff was required, except those specially named ; the words "other papers" are, therefore, without meaning and cannot be held to extend to papers not at the time required to be so transferred. Besides, bonds are referred to as distinct instruments in his hands, taken and held by virtue of his office, for they are designated as "original bonds officially taken by him."

Can a bond or any instrument taken by a Sheriff which the law does not require him to accept in discharge of some duty which it imposes attach to it the incidents and elements which belong to that class of bonds which are directed or authorized by law and therefore regarded as official? In the *matter of Conner*, (12 Rich., 349,) such a bond as the one before us was declared to be only voluntary "and not authorized by law." In *Underwood* vs. *Jacobs*, (3 McC., 447,) it was held that "no privity exists between a Sheriff and his successor but what is created by statute, and it has never yet been extended to actions accruing to him by contract, tort or any other cause." In the last case it was sought, in an action by a succeeding Sheriff, to make a bidder at a sale of land by a preceding Sheriff liable for the difference on a second sale, he not having complied with the terms of the first. The Court could not see how any interest accrued to the succeeding Sheriff from the failure

of the defendant to pay his bid to the Sheriff with whom he had contracted. So, here, what possible interest had Guffin in the bond now sued on? The liability for not taking the property levied on tnto possession and selling it at the next sales day attached on Cason and the sureties on his official bond. Guffin was in no way bound for the default of Cason in not making the sale as required by law. In fact, the levy by Cason was *prima facie* satisfaction of the execution on which it was made, and it devolved on him to show how and why it had failed to produce it. Suppose, after the levy, he had delivered the chattels to a third person for safe keeping, and had taken a bond for their delivery on demand,—will it be contended that the relative right and obligations of such a bond would have been at all different from those which are incident to the one before us? and it will scarcely be claimed that a succeeding Sheriff, by virtue of his office, could maintain an action on such a bond.

The Code, by its 134th Section, declares that "every action must be prosecuted in the name of the real party in interest, except as otherwise provided in Section 136," which is as follows: "An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted." As Guffin does not come within the description of persons authorized to sue under this last Section, what possible interest has he as Sheriff in the said bond through which he can prosecute an action on it by virtue of the Section first referred to? He is not responsible for the property levied on by his predecessor, which never came into his possession by any transfer or delivery. If the bond had been retained by Cason, and the demand for its possession by Guffin refused, in right of what interest would he have attempted to enforce its delivery by an action? The act of Cason in leaving the levied property in the hands of the defendant, at the risk of conversion by him, has rendered Cason liable for the value of it to the plaintiff in the execution. He took the bond for his security against the consequence of the very wrong which has followed, and has, therefore, besides the nominal interest as the obligee on the face of it, the real interest which its execution was intended to confer.

It may be that the plaintiff in the execution has such an interest in the bond as might enable him to maintain an action in the event of its assignment to him, or, on the refusal of Cason to

assign, to compel him to do so, and thus enable him to enforce a security in which he has an interest. With that question, however, we have nothing to do. It is enough that we cannot perceive in what way, by what relation, by what statutory enactment, Guffin can be so connected with this bond as to maintain an action on it by virtue of an official interest which he has in it as the Sheriff.

The motion is dismissed.

*Wright*, A. J., concurred.

.WILLARD, A. J., dissenting. The plaintiff sues as Sheriff upon a bond given to his predecessor in office and turned over to him as Sheriff. The plaintiff was nonsuited, and now moves to set the nonsuit aside. Cason, the late Sheriff, levied on property of N. Ingram, under an execution against his property, and left the property in the possession of the judgment debtor, taking an obligation on the part of Ingram, in which the defendants joined as sureties, to the effect that the property should be returned to the Sheriff at any time on demand. The instrument in question was sealed, and contained a penalty or an ascertained sum of money, and must be regarded as a bond.

It appears that the bond was forfeited; that the property is wasted and lost, and that the judgment debtor has died insolvent.

No question is made as to the right of Cason, the late Sheriff, to sue upon the bond; but it is said that it is not assignable, and has not been, in fact, assigned, and that the present Sheriff had no right of action upon it. Section 16, at page 160, of the General Statutes provides: "That it shall be the duty of every Sheriff to turn over to his successor all the furniture appertaining to his office, the original writ book and sale book, and also the original execution book, or a correct certified copy thereof, and also all original bonds officially taken by him, also all ·mesne process not served, and all final process partially or wholly unexecuted."

Section 55, on page 168, of the General Statutes refers to this Section as if the additional words "other papers" were contained in it.

It is clear that the statute intended not only to make all bonds answering the description assignable, but also to make the act of turning them over a good and valid assignment of them. Unless it means this, it is without practical efficiency to accomplish the end

intended, namely, to put the new Sheriff in the same position as that occupied by the retiring Sheriff as regards the possession of the means of enforcing the process of the Court.

The only question that remains is, whether the bond in suit is of the class included in those described by the Act.

The Act embraces all bonds taken by him officially—that is in the character of Sheriff. There is nothing in the language or intent of the statute to confine it to bonds which the Sheriff is specially authorized to take by law. Such is not the plain import, while the intent of the statute demands the fullest transfer of all that may be essential to the protection of the judgment creditor.

The bond in suit is undoubtedly within the description, and must therefore be regarded both as assignable and as already assigned.

The nonsuit should be set aside and the cause remanded for further proceedings.

---

HEARD APRIL TERM, 1876.